## COMMONWEALTH *vs.* WILLIAM J. SQUAILIA.

Plymouth. February 2, 1999. - March 2, 1999.

Present: WILKINS, C.J., ABRAMS, GREANEY, FRIED, & IRELAND, JJ.

*Evidence,* Relevancy and materiality, Cross-examination, Prior misconduct, State of mind, Cumulative evidence. *Intent. Practice, Criminal,* Argument by prosecutor, Instructions to jury, Assistance of counsel, Capital case. *Homicide. Malice.*

At a murder trial, there was no reversible error in the judge's admission in evidence of a briefcase and papers therein belonging to the defendant, which defense counsel declined to examine or to make objection to and which could not have adversely affected the jury's consideration of the key issue of the defendant's intent. [103-104]

At a murder trial, the judge did not err or abuse his discretion in excluding testimony of two witnesses proffered by the defendant to support his own testimony that his wife, the victim, had been having an extramarital affair, where that testimony would not have been relevant or probative of any issue. [104-105]

On appeal in a murder case, the defendant demonstrated no prejudice from the prosecutor's cross-examination of his expert witness, a psychologist. [105]

At a murder trial, evidence of the defendant's threat to a witness, who the defendant suspected had a sexual relationship with the defendant's wife, the victim, was properly admitted as relevant to the defendant's intent or state of mind [105-106], and the prosecutor's comments on that evidence in closing argument were proper [106].

At a murder trial, error, if any, in the admission of evidence of the victim's fear of the defendant created no substantial likelihood of a miscarriage of justice, where it was a minor reference and only cumulative of other evidence of the parties' relationship. [106-107]

At the trial of an indictment for murder in the first degree, an error in the judge's instruction to the jury on premeditation did not create a substantial likelihood of a miscarriage of justice in the context of the instruction as a whole [107], and where the jury found the defendant guilty by reason of deliberate premeditation, the judge's reference to the second and third prongs of malice could not have created a substantial likelihood of a miscarriage of justice [107].

At a murder trial, the judge's instruction to the jury on intentional killing was correct and created no improper presumption. [107]

At the trial of a murder indictment, the judge correctly refused to instruct the jury on voluntary manslaughter arising from the heat of sudden passion, where the evidence provided no reasonable basis for such an instruction. [107-109]

In a murder case, the trial judge correctly denied the defendant's motion for a new trial based on a claim that trial counsel provided ineffective assistance by failing to file a motion to suppress his statements to police, where the record demonstrated that the defendant and his counsel made a strategic decision not to seek suppression of the statements [109-111]; and the defendant's other assertions of ineffectiveness of counsel were without merit [111].

INDICTMENT found and returned in the Superior Court Department on September 21, 1993.

The case was tried before *Robert L. Steadman*, J., and a motion for a new trial was considered by *Charles J. Hely*, J.

*David H. Erickson* for the defendant.

*Robert C. Thompson*, Assistant District Attorney, for the Commonwealth.

GREANEY, J. The defendant was convicted by a jury of the deliberately premeditated murder of his wife. Represented by new counsel, he appeals from the judgment of conviction and the denial of his motion for a new trial in which he argued that his trial counsel had provided him with ineffective assistance. We conclude that there is no basis to order a new trial or to grant the defendant relief pursuant to G. L. c. 278, § 33E. Accordingly, we affirm the order denying the defendant's motion for a new trial and the judgment of conviction.

The Commonwealth presented a strong case which warranted the jury's concluding that the defendant shot and killed the victim after he had deliberately premeditated her murder. The defendant did not deny that he killed her. The contested issue at trial was whether the defendant did so intentionally, as the Commonwealth asserted, because he thought the victim was having an extramarital affair, or whether, as the defendant claimed, he shot her accidentally. His contentions on appeal concern the introduction of what he argues was inadmissible evidence, alleged errors in the judge's instructions to the jury, and alleged ineffective assistance by his trial counsel.

1. We discern no basis for reversal in the defendant's arguments concerning the judge's rulings on evidence.

(a) There was testimony that three or four days before the killing, the defendant brought a briefcase to a neighbor's house and asked the neighbor to hold it for him. The defendant told the neighbor that the briefcase contained personal papers that he

did not want the victim to destroy. The defendant later told the police that the briefcase also had contained the handgun used to shoot the victim. The neighbor testified that the defendant retrieved the briefcase at about 4:45 P.M. on the day of the killing. After the killing, the police found the briefcase in the master bedroom of the home occupied by the defendant and the victim.

The prosecutor moved to introduce the briefcase and its contents in evidence.[1] She argued that the evidence had relevance on the issue of premeditation. She maintained that the defendant's conduct with respect to the briefcase showed that he wanted to "get [the contents of the briefcase] away from [the victim]," but then "at some point he brought [the briefcase] back when he decided what he was going to do." The prosecutor summed up her position as follows: "And thus, everything that's in [the briefcase] should be considered relevant for the jury to peruse to decide why this man would take a briefcase with these papers next door to a neighbor, including a gun, instead of locking them in the trunk of his car or [putting the briefcase in] a place where his wife might get access and [the jury should] consider [the contents of the briefcase] strictly [on] the Commonwealth's point [about] a man who considered his options and ultimately chose death as the solution to his problems."

The judge indicated that he would admit the evidence over an objection by the defendant's trial counsel as to relevance. The judge, however, gave the defendant's trial counsel the opportunity to examine the contents of the briefcase and object to any document or item in it. The defendant's trial counsel declined the opportunity, stating, "I feel very sure there's nothing [prejudicial] in there. I never had a question about that."

The defendant now argues that the briefcase contained papers that were harmful to his case including, among other documents, a welfare application, information concerning past child support obligations, a copy of the divorce judgment from a prior marriage indicating that the divorce had been granted on the ground of cruel and abusive treatment, and information concerning a workers' compensation claim.

We have examined the briefcase and the papers in it. The prosecutor's general theory of relevance had merit, but the point

---

[1] The handgun used to shoot the victim, which had been in the briefcase, was turned over to the police by the defendant on the night of the shooting.

she sought to establish could have been made without introducing the briefcase and its contents which included irrelevant papers and documents. It is important that the defendant's trial counsel declined the opportunity to examine the contents of the briefcase and to make a more specific objection or objections.[2] We conclude that the defendant incurred no prejudice. The papers and documents represent for the most part the type of papers that most people keep in their desks or in some other secure place. They concern matters that occur in the course of an average person's life. The defendant's ex-wife testified and described the grounds for their separation (the defendant's involvement with the victim and "irreconcilable differences"), and she went on to state that, despite the divorce, she and her daughters continued to maintain a relationship with him. The divorce judgment, about which the defendant now complains, was cumulative of his ex-wife's testimony about the breakup of their marriage. We conclude that the contents of the briefcase could not have adversely affected the jury's consideration of the key issue of intent.

(b) The defendant's trial counsel sought to introduce the testimony of two witnesses who were business partners of the man with whom the victim was supposedly having an extramarital affair. After hearing a brief offer of proof from the defendant's trial counsel, the judge excluded it. The defendant argues that the testimony would have supported his own testimony that he believed that the victim was having an affair and explained why his relationship with the victim had begun to deteriorate. He claims that the exclusion of the evidence caused prejudice.

The existence of an extramarital affair, by itself, would not excuse, justify, or mitigate the homicide. See *Commonwealth* v. *Andrade*, 422 Mass. 236, 237-238 (1996). What the two prospective witnesses might have testified to was disputed, and it was far from clear whether they could provide any relevant evidence. The offer of proof made by the defendant's trial counsel contained little probative information. The judge indicated that he might be willing to hold a voir dire of the witnesses, but none was requested. There was no evidence that the defendant was aware of the information that the witnesses sup-

---

[2]In the absence of objection, the standard of review is whether the admission of this evidence created a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Carmona*, 428 Mass. 268, 271-272 (1998).

posedly had possessed. It was the defendant's belief about the existence of an extramarital affair at the time of the killing that was the significant issue, not whether such an affair was actually taking place. There was evidence that the defendant believed that the victim was having an extramarital affair. According to the defendant's testimony, the victim confirmed that she was involved with another man and intended to leave the defendant. The judge had discretion with respect to the testimony of these witnesses, and he did not abuse his discretion in excluding it.

(c) The defendant argues that the prosecutor engaged in improper cross-examination of his expert witness, a forensic psychologist. The expert testified that the defendant had a dependent personality and, at the time of the shooting, suffered from depression which had been building for months; that the defendant had "several other very significant stresses"; and that, while the defendant was not mentally ill, he had serious psychological problems which affected him when he accidentally shot the victim.

The prosecutor, in her cross-examination of the defendant's expert, was met by objections from the defendant's trial counsel when she strayed over the boundaries of permissible cross-examination. By sustaining objections where appropriate, the judge kept the cross-examination within proper limits. The defendant's expert himself corrected possible mischaracterizations of his testimony made by the prosecutor. The defendant has not shown that he was prejudiced by the prosecutor's cross-examination.[3]

(d) One witness testified that the defendant had once threatened him with a baseball bat, stating he would beat the witness's head in because he suspected the witness "was trying to fuck his wife." This prior bad act evidence was properly admitted, within the judge's discretion, as relevant to show the defendant's intent or his state of mind, and as some evidence tending to disprove that the killing was an accident. See *Commonwealth* v. *Phinney*, 416 Mass. 364, 375 (1993); *Commonwealth* v. *Scott*, 408 Mass. 811, 818-820 (1990). The judge offered to give a limiting instruction on the testimony at the time it was introduced, but the defendant's trial counsel declined

---

[3]The defendant also complains about a chalk which the prosecutor allegedly used during her cross-examination of the expert. The judge gave an instruction on the role of the chalks that had been used. The instruction would eliminate any possible prejudice.

the offer, and he never requested an instruction later. "Contrary to the defendant's claim advanced here for the first time, the law does not require a judge to give limiting jury instructions regarding the purpose for which evidence is offered unless so requested by the defendant." *Commonwealth* v. *Leonardi*, 413 Mass. 757, 764 (1992), and cases cited. There was no error in the admission of the testimony.

We also reject the defendant's argument that the prosecutor unfairly characterized the evidence in her closing argument. There was no objection to the argument by the defendant's trial counsel. The prosecutor's comments were based on the evidence, and, read in context, referred to the defendant's state of mind rather than his general character. See *Commonwealth* v. *Daggett*, 416 Mass. 347, 355 (1993).

(e) The killing occurred on August 31, 1993. The victim's brother testified that an incident occurred during the summer of 1993, when he was called to the home of the man supposedly having an affair with the victim. The victim, the defendant, and her suspected male friend were present. According to the victim's brother, the friend took him aside and said: "The reason [the victim] is here [at my home] is because she wants to leave [the defendant] and she doesn't know how to tell him because she is afraid of him." The friend also testified that the victim said, "I'm afraid," when the defendant arrived and found them together. The defendant's trial counsel did not object to this testimony. The defendant now argues that the testimony was improper. See *Commonwealth* v. *Cyr*, 425 Mass. 89, 93-94 (1997).

The testimony may have been properly admitted to rebut the defendant's claim that the victim was at her male friend's home on that day because she was pursuing her extramarital affair with him. See *Commonwealth* v. *Magraw*, 426 Mass. 589, 596 (1998). Even if it was error to admit the testimony, there is no substantial likelihood of a miscarriage of justice. The evidence was fragmentary and not comparable to the substantial and repeated hearsay evidence of fear on the part of victims that was properly objected to, and led to the reversals of murder convictions, in cases such as *Commonwealth* v. *Qualls*, 425 Mass. 163, 167-173 (1997), and *Commonwealth* v. *Cyr*, *supra* at 92-95. The evidence was also cumulative on the points of the defendant's state of mind in view of ample other evidence of threats, acts of physical violence, marital discord, suspicions of

infidelity, the defendant's statements to others that he intended to kill the victim, and the defendant's additional statement that, "If I can't have her no one will." See *Commonwealth* v. *Andrade*, 422 Mass. 236, 240 (1996).

2. We next discuss the alleged errors in the judge's instructions.

(a) The trial judge was the same judge who, in *Commonwealth* v. *Kosilek*, 423 Mass. 449, 453 (1996), said in his final jury instructions concerning the element of deliberate premeditation that premeditation "does *not* exclude action that is taken so quickly that there is no time to think about the action and then determine to do it" (emphasis added). The judge gave the same instruction in this case, and he repeated it when he defined deliberate premeditation in answer to a question from the jury during their deliberations. There was no objection on either occasion. The instruction was error. For the reasons expressed in the *Kosilek* decision, *id.* at 454, we reject the defendant's argument that the misstatement requires a new trial.

(b) The only theory of murder in the first degree before the jury was deliberate premeditation. The judge correctly instructed on premeditation (except for the slip described above), and he defined malice by describing all three of its prongs without explicitly stating that only the first prong, specific intent to kill, is relevant to a charge of premeditated murder in the first degree. Because the jury found premeditation, the reference to the second and third prongs of malice could not create a substantial likelihood of a miscarriage of justice. The judge had instructed that the jury had to find, beyond a reasonable doubt, that the defendant intended to kill the victim before they could find premeditation. See *Commonwealth* v. *Nolan*, 427 Mass. 541, 544 (1998), and cases cited.

(c) The judge instructed the jury without objection that: "Any intentional killing of a human being without legal justification or excuse with no[] extenuating circumstances sufficient in law to reduce the crime to manslaughter is malicious within the meaning of malice aforethought." The instruction was correct. See *Commonwealth* v. *Adrey*, 397 Mass. 751, 755 (1986) ("An intentional killing without justification or excuse is indeed an unlawful killing with malice aforethought, and is murder"). The instruction did not create or convey an improper presumption.

(d) The judge instructed the jury on murder in the first degree by reason of deliberate premeditation, murder in the second

degree, and involuntary manslaughter. He also told the jury that the defendant could not be found liable for an accidental killing. The judge stated that the Commonwealth was required to prove beyond a reasonable doubt that the victim's killing was not accidental. He further advised the jury that they could consider "any evidence of mental impairment on whether the defendant . . . had the capacity to form any necessary state of mind, intent or knowledge."

The judge denied the defendant's request to instruct the jury on voluntary manslaughter on the theory that the victim had been shot when the defendant lost his self-control and acted in the heat of sudden passion. See *Commonwealth* v. *Schnopps*, 383 Mass. 178, 180 (1981), *S.C.*, 390 Mass. 722 (1984). The defendant argues that the failure to instruct on voluntary manslaughter constitutes error that requires a new trial. We disagree.

The defendant testified at the trial that the killing was accidental. He said it occurred when the victim had come home late, and they had argued in the master bedroom over her continuation of an extramarital affair which she had promised to stop. The defendant said that he had retrieved his handgun and loaded it with two bullets. He testified that he was upset and unhappy and started waving the handgun around. At some point, he began to have a "spell" of the type he frequently had before. He said that, during the spell, he began "sliding down on the bureau," the handgun went off, and the victim was shot by a single bullet.[4] The defendant stated to the jury that, when his spell wore off, he realized, for the first time, that he might have shot the victim.

The defendant told his ex-wife and the forensic psychologist who examined him and testified on his behalf that he did not intentionally shoot his wife and that the killing was an accident. He repeatedly denied being angry with the victim during their argument. He testified unequivocally, that, while he was upset, depressed, and crying, he was not angry with the victim when she confirmed his suspicions that she had not broken off her extramarital affair and stated that she was going to leave him.

---

[4]The evidence showed that the handgun was probably two to three feet from the victim when it·was fired, that the bullet entered the victim's right side and damaged her liver, stomach, spleen, and diaphragm, and caused massive internal bleeding. There was medical testimony that it could have taken as long as one hour for the victim to die.

His expert witness testified with respect to the shooting that the defendant's "[v]ery serious psychological problems . . . culminated at that moment in time where he was overwhelmed by . . . emotion . . . *and the gun discharged accidentally*"[5] (emphasis added).

Voluntary manslaughter is an unlawful killing which occurs in circumstances which negate the element of malice. See *Commonwealth* v. *Acevedo*, 427 Mass. 714, 715-716 (1998); *Commonwealth* v. *Jefferson*, 416 Mass. 258, 262 (1993). Put differently, voluntary manslaughter is an *intentional killing*, which is mitigated by extenuating circumstances. See *Commonwealth* v. *Jefferson*, *supra* at 262, 264. An accidental killing is, by definition, an *unintentional* killing, and as such is excused by law. See *Commonwealth* v. *Lowe*, 391 Mass. 97, 110-111, cert. denied, 469 U.S. 840 (1984); *Commonwealth* v. *Knight*, 37 Mass. App. Ct. 92, 104 & n.7 (1994). Voluntary manslaughter and an accidental killing are mutually exclusive concepts in the criminal law of homicide. The evidence, considered most favorably to the defendant, provided no reasonable basis to warrant a voluntary manslaughter instruction. The judge correctly denied the instruction requested by the defendant's trial counsel.

3. The defendant's motion for a new trial argued that he should be retried because his trial counsel provided him with ineffective assistance. The trial judge had retired from the bench by the time the motion was presented, and it was decided by another judge in the Superior Court. This judge evaluated the allegations in the motion and its supporting documents in light of the complete trial transcript and the motions and papers in the case and did not hold a hearing on the motion. He stated his reasons for denying the motion in a lengthy memorandum of decision. In that memorandum, he noted that the defendant's trial counsel was "an experienced, skilled and energetic criminal defense attorney who regularly represents defendants in murder and other serious felony cases." We have examined the defendant's appellate argument concerning the motion under the standard governing claims of ineffective assistance of counsel in the case of a conviction of murder in the first degree. See *Commonwealth* v. *Parker*, 420 Mass. 242, 245-246 (1995), quoting *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992).

---

[5]The expert also testified that the defendant's rage was a "major factor" affecting his emotional state. He did not indicate that the defendant's rage resulted from anything the victim said on the night of the killing as opposed to the defendant's long-term resentment over the victim's conduct.

(a) The defendant made statements to the police shortly after the murder when he went to the police station to turn himself in and to surrender his handgun. When he surrendered his handgun, he said to a police officer, "I did it, here it is." He later told another police officer that the incident occurred because the victim had been staying out late and he was suspicious of an extramarital affair on her part. The defendant told a State trooper that the victim "drove him to it" by her infidelity and conduct. He explained that, on the night of the killing, he and the victim argued, and he put a single bullet in his handgun and "must have shot her." The Commonwealth moved, in advance of the trial, to require the defendant to disclose whether he intended to file and litigate a pretrial motion to suppress.[6] The defendant filed a written response to the Commonwealth's motion which he and his trial counsel signed. The response stated that, "after consultation with counsel no motion to suppress will be filed in [this] case regarding statements made by the [d]efendant to the Wareham [p]olice or the State [p]olice."

In his motion for a new trial, the defendant asserted that his trial counsel provided ineffective assistance because he did not file a motion to suppress. The defendant alleged that his statements to the police were obtained in violation of his Miranda rights and his right to counsel, and that they were involuntary. In his affidavit in support of the new trial motion, the defendant stated that he had exercised his right to remain silent and had requested an attorney and went on to state "[a]t no time did I knowingly, voluntarily, or intelligently waive any motion to suppress in this matter."

The judge rejected the defendant's assertions because the record reasonably demonstrated that the defendant and his trial counsel had discussed whether to file a motion to suppress, and they had made a strategic decision not to do so. The judge's conclusion is supported by the defendant's signed acknowledgment quoted above, and the indication from the record that the defendant and his trial counsel appear to have concluded that, while the defendant told the police he had shot the victim, his statements conveyed a considerable amount of information that

---

[6]The motion to disclose stated that the defendant had not yet filed a motion to suppress and, "If the defendant waits until mid-trial to challenge the admissibility of his [statements], and if upon hearing the trial court allow[s] a motion to suppress, then jeopardy will have attached and the Commonwealth will be foreclosed from filing an interlocutory appeal."

would support his defense strategy as it was being planned out prior to trial. The motion judge correctly rejected the defendant's contentions.[7]

(b) The defendant's remaining assertions of ineffective assistance were properly denied by the motion judge for the reasons stated in his memorandum of decision. They need not be separately discussed.

4. There is no reason to grant the defendant relief pursuant to G. L. c. 278, § 33E. There was ample evidence that the defendant premeditated the killing. The defendant has not demonstrated that any ruling made by the trial or motion judge could have had a significant impact on the fairness or justice of the result.

5. The order denying the defendant's motion for a new trial is affirmed. The judgment of conviction is affirmed.

*So ordered.*

---

[7]We reject the defendant's additional argument that the trial judge should have held an evidentiary hearing, sua sponte, before the statements were admitted to determine whether they were voluntary. The judge, despite the defendant's written position on the issue, inquired of his trial counsel whether voluntariness was an issue. The defendant's trial counsel said that it was not, and he declined the judge's offer to give an instruction to the jury on voluntariness.