**Raymond J. CHAMPAGNE,
Petitioner, Appellant,**

v.

**John MARSHAL, Warden at Walpole
Prison, Respondent, Appellee.**

No. 02–2551.

United States Court of Appeals,
First Circuit.

March 10, 2004.

Raymond J. Champagne, on Memorandum in Support of a Certificate of Appealability pro se.

Before TORRUELLA, Circuit Judge, STAHL, Senior Circuit Judge, and LYNCH, Circuit Judge.

PER CURIAM.

Raymond Champagne seeks a certificate of appealability (COA) to appeal from the district court's denial of his petition pursuant to 28 U.S.C. § 2254. Champagne was convicted with two co-defendants of first degree murder, resulting in the death of Stephen Curvin, a fellow inmate at M.C.I. Walpole. The Massachusetts Supreme Judicial Court (SJC) affirmed the conviction. *See Commonwealth v. Champagne*, 399 Mass. 80, 503 N.E.2d 7 (1987).

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a habeas petition "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court decision: 1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or 2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's determination of factual issues "shall be pre-sumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." § 2254(e)(1).

"The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits. We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason." *Miller–El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Applying these standards to petitioner's claims, we conclude that a COA should not issue.

### I. *Brady Claims*

These claims concern the alleged suppression by the government of the discovery of two "picks" (weapons) in the vicinity of the crime scene, one found in the trash (the "trash pick") and one found in a co-defendant's cell (the "Hogan pick"). Under the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), a due process violation occurs when the following three components are satisfied:

> The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

*Strickler v. Greene*, 527 U.S. 263, 282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

### A. *Trash Pick*

The district court determined that the SJC had reasonably applied the *Brady* standard in concluding that Champagne had failed to make his case that the trash pick would have been exculpatory. Champagne argued that the trash pick, if intro-

duced into evidence, would have helped impeach James Bernadini, an inmate who gave testimony incriminating of Champagne. However, Champagne's argument assumes that the trash pick could not have caused Curvin's wounds. The SJC, however, found that the record did not support that assumption: "Just as we would have trouble concluding on the record that the pick could have caused some or all of the victim's stab wounds, we would have trouble concluding that the pick could not have caused any of those wounds." *Champagne*, 399 Mass. at 90, 503 N.E.2d 7. On this record, reasonable jurists could not debate the district court's assessment that the SJC's determination was neither: 1) an unreasonable application of *Brady*, nor 2) based on an unreasonable determination of the facts in light of the evidence presented in state court.

### B. *Hogan's Pick*

After a hearing at which Champagne's trial counsel and the state prosecutor testified, the trial court determined that the prosecutor had become aware of the discovery of Hogan's pick while the jury was being empaneled and had conveyed that information to defense counsel at that time. The trial court further found that Champagne's defense counsel had no memory of that information being conveyed. The SJC concluded that "[t]he trial judge warrantably concluded that the prosecutor advised Champagne's counsel of the fact of the discovery shortly before the jury were empaneled." *Champagne*, 399 Mass. at 91, 503 N.E.2d 7.

■ In his § 2254 petition, Champagne challenged the SJC's factual determination that the prosecutor had disclosed the existence of this evidence to defense counsel prior to trial. The district court properly applied the following standard to that challenge:

[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Champagne relies entirely on the transcript of the hearing before the trial court and on the absence of any recorded references to the Hogan pick during trial. The district court found that "the record supports the finding made by the trial judge," and that Champagne had not met his burden of rebutting the presumption of correctness by clear and convincing evidence. Having reviewed the record, we conclude that reasonable jurists could not find this assessment by the district court to be debatable or wrong.

### II. *Grand Jury Claims*

Champagne sought relief pursuant to § 2254 on the grounds that the Grand Jury process was impaired, alleging as follows: that 1) State Trooper John Nasuti, who investigated the crime, knowingly gave false testimony before the grand jury; 2) there was insufficient evidence to support the indictment; and 3) Nasuti gave a prejudicial and non-responsive answer in his testimony before the grand jury.

"All but the most serious errors before the grand jury are rendered harmless by a conviction at trial. [*United States* v.] *Mechanik*, 475 U.S. [66,] 73, 106 S.Ct. 938, 89 L.Ed.2d 50 [1986]." *United States v. Reyes–Echevarria*, 345 F.3d 1, 4 (1st Cir. 2003). "Usually, the trial jury's verdict provides an adequate safeguard against the failings of the grand jury process. Thus, dismissal after conviction is appropriate only in cases of 'serious and blatant prosecutorial misconduct'—misconduct so grave that it calls into doubt the fundamental fairness of the judicial process."

*United States v. Ortiz de Jesus*, 230 F.3d 1, 4 (1st Cir.2000).

### A. Claim that False Testimony Presented to Grand Jury

The superior court found that "although the informant's trial testimony did not fully support the statements attributed to him before the grand jury, there was nothing to show that the investigating officer knowingly presented false testimony to the grand jury." *Champagne*, 399 Mass. at 85, 503 N.E.2d 7. The SJC found that there had been no showing "that at any time the prosecutor or any agent of the Commonwealth knew that the grand jury had been given false information. Irreconcilable inconsistencies between trial evidence and evidence presented to the indicting grand jury are not sufficient themselves to warrant dismissal of an indictment." *Id.* at 85, 503 N.E.2d 7.

■ Having reviewed the record, we conclude that Officer Nasuti's testimony before the grand jury may have contained a misstatement that Butler had actually seen Champagne walk "into" Cell 14 (where the murder allegedly occurred), while Nasuti knew that Butler could only have seen Champagne walk "in the direction of" Cell 14. However, the trial transcript indicates that Nasuti's trial testimony "plausibly can be viewed as serving to clarify his grand jury testimony, rather than repudiating it in toto." *Ortiz de Jesus*, 230 F.3d at 4. Therefore, reasonable jurists could not find the district court's assessment, that "the state court's finding that Nasuti did not knowingly testify falsely before the grand jury [was] a reason-

### B. Sufficiency of the Grand Jury Evidence to Support the Indictment

The SJC determined on direct appeal that the grand jury was warranted in "inferr[ing] that Champagne was in the cell or the immediate vicinity of the cell in which the stabbings occurred" and "in concluding that this was probably not a situation in which Champagne was merely present in the cell or its vicinity." *Champagne*, 399 Mass. at 83, 503 N.E.2d 7. Therefore, the SJC affirmed the denial of Champagne's motion to dismiss the indictment.

■ The district court determined that this aspect of the SJC's opinion was not "contrary to" and did not "invovle[ ] an unreasonable application of" federal law. 28 U.S.C. § 2254(d). Specifically, the district court applied the following principal: "[T]he petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted." *United States v. Lopez–Lopez*, 282 F.3d 1, 9 (1st Cir.2002) (quoting *Mechanik*, 475 U.S. at 67, 106 S.Ct. 938). Reasonable jurists could not find the district court's assessment of this claim debatable or wrong.

### C. Prejudicial Comment by Nasuti

Similarly, reasonable jurists would not find debatable or wrong the district court's conclusion that the claimed prejudice from Nasuti's comment did not entitle Champagne to habeas relief.[2] "Only a defect so

able interpretation of the record," debatable or wrong.[1]

---

1. The district court also ruled that the claim had been procedurally defaulted in state court. Because we find that the procedural default determination is debatable among rea-

sonable jurists, we rely instead on the district court's alternative holding on the merits.

2. The comment was that "the three or four people involved here have been suspected of

fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment, gives rise to the constitutional right not to be tried." *Reyes–Echevarria*, 345 F.3d at 4 (quoting *Midland Asphalt Corp. v. United states*, 489 U.S. 794, 802, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989)). For the reasons given by the SJC (in determining that Champagne had not shown that Nasuti's comment "was likely to have made a difference in the grand jury's determination to indict him"), reasonable jurists could not find the district court's assessment of this claim debatable or wrong.

### III. Jury Instructions

Champagne's final § 2254 claim is that the jury instructions on implied "malice aforethought" shifted the burden of proof as to an essential element of the charged offense to the defendant, in violation of his due process rights. Specifically, the claim was that the instructions relieved the prosecution of its burden to prove beyond a reasonable doubt that the killer acted with malice. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of *every fact* necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

Under Massachusetts law, to convict a defendant of murder, the prosecution must prove "that, inter alia, the killing was *both* unlawful (i.e., without legal excuse or justification, such as accident, self-defense, or defense of another) *and* committed with malice aforethought (i.e., without, for example, heat of passion induced by adequate provocation or sudden combat, or the use of excessive force in self-defense or defense of another)." *Commonwealth v. Medina*, 430 Mass. 800, 430 Mass. 800, 806

this type of thing before within the institu-

(2000). "Voluntary manslaughter is an unlawful killing which occurs in circumstances which negate the element of malice." *Commonwealth v. Squailia*, 429 Mass. 101, 109, 706 N.E.2d 636 (1999).

The SJC ruled on direct appeal that the malice instruction, viewed in light of the entire charge, did not "mislead the jury as to the burden on the Commonwealth to prove every element of the crime beyond a reasonable doubt." *Champagne*, 399 Mass. at 91–92, 503 N.E.2d 7. It also concluded that "[m]alice was not, in any event an issue at trial." *Id.* at 92, 503 N.E.2d 7. The district court concluded that the SJC's determination that the instruction did not mislead the jury as to the Commonwealth's burden to prove malice might be " 'contrary to' or an 'unreasonable application of' Supreme Court precedent." However, it agreed with the SJC's determination that malice was not a contested issue at trial. Therefore, the district court concluded that "the trial judge's instruction even if erroneous cannot be said to have had 'a substantial, injurious effect on the jury's verdict,' " and accordingly Champagne was not entitled to habeas relief.

■ In this case, as in *Medina v. Matesanz*, 298 F.3d 98 (1st Cir.2002), the facts that the jury found sufficient to prove the unlawful killing provided strong evidence that the assailants acted with malice. No one disputed the killers' malice at trial. Instead, the issue at trial was the identity of the assailants. As in *Medina*, since malice was not contested, "there was no other evidence to mitigate the compelling force of the evidence of malice." *Medina*, 298 F.3d at 101. There was no evidence presented that the killing was committed in the heat of passion induced by adequate provocation or sudden combat, or resulted

tion."

from the use of excessive force in self-defense or defense of another. At petitioner's request, the jury was not given manslaughter instructions. Under these circumstances, reasonable jurists could not find debatable or wrong the district court's assessment that the SJC's harmless error determination was a reasonable application of Supreme Court law.

Petitioner's request for a COA is *denied* and the appeal is *terminated.*