USCA1 Opinion

 

Not for publication in West's Federal Reporter

Citation Limited Pursuant to 1st Cir. Loc. R. 32.3

United States Court of Appeals

For the First Circuit

No. 02-2551

RAYMOND J. CHAMPAGNE,

Petitioner, Appellant,

v.

JOHN MARSHAL, WARDEN AT WALPOLE PRISON,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M Gorton, U.S. District Judge]

Before

 Torruella, Circuit Judge,

Stahl, Senior Circuit Judge,

and Lynch, Circuit Judge.

 Raymond J. Champagne, on Memorandum in Support of a
Certificate of Appealability pro se.

March 10, 2004

 Per Curiam. Raymond Champagne seeks a certificate of
appealability (COA) to appeal from the district court's denial of
his petition pursuant to 28 U.S.C. § 2254. Champagne was convicted
with two co-defendants of first degree murder, resulting in the
death of Stephen Curvin, a fellow inmate at M.C.I. Walpole. The
Massachusetts Supreme Judicial Court (SJC) affirmed the conviction.
See Commonwealth v. Champagne, 399 Mass. 80 (1987). 

 Under the Antiterrorism and Effective Death Penalty Act of
1996 (AEDPA), a federal court may not grant a habeas petition "with
respect to any claim that was adjudicated on the merits in State
court proceedings" unless the state court decision: 1) "was
contrary to, or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court of the
United States" or 2) "was based on an unreasonable determination of
the facts in light of the evidence presented in the State court
proceeding." 28 U.S.C. § 2254(d). A state court's determination of
factual issues "shall be presumed to be correct. The applicant
shall have the burden of rebutting the presumption of correctness
by clear and convincing evidence." § 2254(e)(1).

 "The COA determination under § 2253(c) requires an overview of
the claims in the habeas petition and a general assessment of their
merits. We look to the District Court's application of AEDPA to
petitioner's constitutional claims and ask whether that resolution
was debatable amongst jurists of reason." Miller-El v. Cockrell,
537 U.S. 322, 336 (2003). Applying these standards to petitioner's
claims, we conclude that a COA should not issue.

 I. Brady Claims

 These claims concern the alleged suppression by the government
of the discovery of two "picks" (weapons) in the vicinity of the
crime scene, one found in the trash (the "trash pick") and one
found in a co-defendant's cell (the "Hogan pick"). Under the rule
of Brady v. Maryland, 373 U.S. 83 (1963), a due process violation
occurs when the following three components are satisfied:

 The evidence at issue must be favorable to the accused,
either because it is exculpatory, or because it is
impeaching; that evidence must have been suppressed by
the State, either willfully or inadvertently; and
prejudice must have ensued.

Strickler v. Greene, 527 U.S. 263, 282 (1999).

 A. Trash Pick

 The district court determined that the SJC had reasonably
applied the Brady standard in concluding that Champagne had failed
to make his case that the trash pick would have been exculpatory. 
Champagne argued that the trash pick, if introduced into evidence,
would have helped impeach James Bernadini, an inmate who gave
testimony incriminating of Champagne. However, Champagne's
argument assumes that the trash pick could not have caused Curvin's
wounds. The SJC, however, found that the record did not support
that assumption: "Just as we would have trouble concluding on the
record that the pick could have caused some or all of the victim's
stab wounds, we would have trouble concluding that the pick could
not have caused any of those wounds." Champagne, 399 Mass. at 90. 
On this record, reasonable jurists could not debate the district
court's assessment that the SJC's determination was neither: 1) an
unreasonable application of Brady, nor 2) based on an unreasonable
determination of the facts in light of the evidence presented in
state court.

 B. Hogan's Pick

 After a hearing at which Champagne's trial counsel and the
state prosecutor testified, the trial court determined that the
prosecutor had become aware of the discovery of Hogan's pick while
the jury was being empaneled and had conveyed that information to
defense counsel at that time. The trial court further found that
Champagne's defense counsel had no memory of that information being
conveyed. The SJC concluded that "[t]he trial judge warrantably
concluded that the prosecutor advised Champagne's counsel of the
fact of the discovery shortly before the jury were empaneled."
Champagne, 399 Mass. at 91. 

 In his § 2254 petition, Champagne challenged the SJC's factual
determination that the prosecutor had disclosed the existence of
this evidence to defense counsel prior to trial. The district
court properly applied the following standard to that challenge:

 [A] determination of a factual issue made by a State
court shall be presumed to be correct. The applicant
shall have the burden of rebutting the presumption of
correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Champagne relies entirely on the
transcript of the hearing before the trial court and on the absence
of any recorded references to the Hogan pick during trial. The
district court found that "the record supports the finding made by
the trial judge," and that Champagne had not met his burden of
rebutting the presumption of correctness by clear and convincing
evidence. Having reviewed the record, we conclude that reasonable
jurists could not find this assessment by the district court to be
debatable or wrong.

 II. Grand Jury Claims

 Champagne sought relief pursuant to § 2254 on the grounds that
the Grand Jury process was impaired, alleging as follows: that 1)
State Trooper John Nasuti, who investigated the crime, knowingly
gave false testimony before the grand jury; 2) there was
insufficient evidence to support the indictment; and 3) Nasuti gave
a prejudicial and non-responsive answer in his testimony before the
grand jury. 

 "All but the most serious errors before the grand jury are
rendered harmless by a conviction at trial. [United States v.]
Mechanik, 475 U.S. [66,] 73 [1986]." United States v. Reyes-Echevarria, 345 F.3d 1, 4 (1st Cir. 2003). "Usually, the trial
jury's verdict provides an adequate safeguard against the failings
of the grand jury process. Thus, dismissal after conviction is
appropriate only in cases of 'serious and blatant prosecutorial
misconduct' - misconduct so grave that it calls into doubt the
fundamental fairness of the judicial process." United States v.
Ortiz de Jesus, 230 F.3d 1, 4 (1st Cir. 2000). 

 A. Claim that False Testimony Presented to Grand Jury

 The superior court found that "although the informant's trial
testimony did not fully support the statements attributed to him
before the grand jury, there was nothing to show that the
investigating officer knowingly presented false testimony to the
grand jury." Champagne, 399 Mass. at 85. The SJC found that there
had been no showing "that at any time the prosecutor or any agent
of the Commonwealth knew that the grand jury had been given false
information. Irreconcilable inconsistencies between trial evidence
and evidence presented to the indicting grand jury are not
sufficient themselves to warrant dismissal of an indictment." Id.
at 85.

 Having reviewed the record, we conclude that Officer Nasuti's
testimony before the grand jury may have contained a misstatement
that Butler had actually seen Champagne walk "into" Cell 14 (where
the murder allegedly occurred), while Nasuti knew that Butler could
only have seen Champagne walk "in the direction of" Cell 14. 
However, the trial transcript indicates that Nasuti's trial
testimony "plausibly can be viewed as serving to clarify his grand
jury testimony, rather than repudiating it in toto." Ortiz de
Jesus, 230 F.3d at 4. Therefore, reasonable jurists could not find
the district court's assessment, that "the state court's finding
that Nasuti did not knowingly testify falsely before the grand jury 
[was] a reasonable interpretation of the record," debatable or
wrong. (1)

 B. Sufficiency of the Grand Jury Evidence to Support the
Indictment

 The SJC determined on direct appeal that the grand jury was
warranted in "inferr[ing] that Champagne was in the cell or the
immediate vicinity of the cell in which the stabbings occurred" and
"in concluding that this was probably not a situation in which
Champagne was merely present in the cell or its vicinity."
Champagne, 399 Mass. at 83. Therefore, the SJC affirmed the denial
of Champagne's motion to dismiss the indictment. 

 The district court determined that this aspect of the SJC's
opinion was not "contrary to" and did not "invovle[] an
unreasonable application of" federal law. 28 U.S.C. § 2254(d). 
Specifically, the district court applied the following principal: 
"[T]he petit jury's verdict of guilty beyond a reasonable doubt
demonstrates a fortiori that there was probable cause to charge the
defendants with the offenses for which they were convicted." 
United States v. Lopez-Lopez, 282 F.3d 1, 9 (1st Cir. 2002) (quoting
Mechanik, 475 U.S. at 67). Reasonable jurists could not find the
district court's assessment of this claim debatable or wrong. 

 C. Prejudicial Comment by Nasuti

 Similarly, reasonable jurists would not find debatable or
wrong the district court's conclusion that the claimed prejudice
from Nasuti's comment did not entitle Champagne to habeas relief. (2) 
"Only a defect so fundamental that it causes the grand jury no
longer to be a grand jury, or the indictment no longer to be an
indictment, gives rise to the constitutional right not to be
tried." Reyes-Echevarria, 345 F.3d at 4 (quoting Midland Asphalt
Corp. v. United states, 489 U.S. 794, 802 (1989)). For the reasons
given by the SJC (in determining that Champagne had not shown that
Nasuti's comment "was likely to have made a difference in the grand
jury's determination to indict him"), reasonable jurists could not
find the district court's assessment of this claim debatable or
wrong.

 III. Jury Instructions

 Champagne's final § 2254 claim is that the jury instructions
on implied "malice aforethought" shifted the burden of proof as to
an essential element of the charged offense to the defendant, in
violation of his due process rights. Specifically, the claim was
that the instructions relieved the prosecution of its burden to
prove beyond a reasonable doubt that the killer acted with malice.
"[T]he Due Process Clause protects the accused against conviction
except upon proof beyond a reasonable doubt of every fact necessary
to constitute the crime with which he is charged." In re Winship,
397 U.S. 358, 364 (1970). 

 Under Massachusetts law, to convict a defendant of murder, the
prosecution must prove "that, inter alia, the killing was both
unlawful (i.e., without legal excuse or justification, such as
accident, self-defense, or defense of another) and committed with
malice aforethought (i.e., without, for example, heat of passion
induced by adequate provocation or sudden combat, or the use of
excessive force in self-defense or defense of another)."
Commonwealth v. Medina, 430 Mass. 800,806 (2000). "Voluntary
manslaughter is an unlawful killing which occurs in circumstances
which negate the element of malice." Commonwealth v. Squailia, 429
Mass. 101, 109 (1999).

 The SJC ruled on direct appeal that the malice instruction,
viewed in light of the entire charge, did not "mislead the jury as
to the burden on the Commonwealth to prove every element of the
crime beyond a reasonable doubt." Champagne, 399 Mass. at 91-92. 
It also concluded that "[m]alice was not, in any event an issue at
trial." Id. at 92. The district court concluded that the SJC's
determination that the instruction did not mislead the jury as to
the Commonwealth's burden to prove malice might be "'contrary to'
or an 'unreasonable application of' Supreme Court precedent." 
However, it agreed with the SJC's determination that malice was not
a contested issue at trial. Therefore, the district court
concluded that "the trial judge's instruction even if erroneous
cannot be said to have had 'a substantial, injurious effect on the
jury's verdict,'" and accordingly Champagne was not entitled to
habeas relief.

 In this case, as in Medina v. Matesanz, 298 F.3d 98 (1st Cir.
2002), the facts that the jury found sufficient to prove the
unlawful killing provided strong evidence that the assailants acted
with malice. No one disputed the killers' malice at trial. 
Instead, the issue at trial was the identity of the assailants. As
in Medina, since malice was not contested, "there was no other
evidence to mitigate the compelling force of the evidence of
malice." Medina, 298 F.3d at 101. There was no evidence presented
that the killing was committed in the heat of passion induced by
adequate provocation or sudden combat, or resulted from the use of
excessive force in self-defense or defense of another. At
petitioner's request, the jury was not given manslaughter
instructions. Under these circumstances, reasonable jurists could
not find debatable or wrong the district court's assessment that
the SJC's harmless error determination was a reasonable application
of Supreme Court law.

 Petitioner's request for a COA is denied and the appeal is
terminated. 

 
1. The district court also ruled that the claim had been
procedurally defaulted in state court. Because we find that the
procedural default determination is debatable among reasonable
jurists, we rely instead on the district court's alternative
holding on the merits.
2. The comment was that "the three or four people involved here
have been suspected of this type of thing before within the
institution."