**David M. SCHLESSINGER,**
**Plaintiff–Appellant,**

v.

**George SALIMES, et al., Defendants–**
**Appellees.**

**Nos. 96–1730, 96–2606.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 28, 1996.

Decided Nov. 15, 1996.

Andrew J. Shaw (argued), Wawatosa, WI, for Plaintiff–Appellant.

Charles H. Bohl, Milwaukee, WI, Kathryn M. West, DeVonna Joy, Nathan Fishback (argued), Whyte Hirschboeck Dudek, Milwaukee, WI, for George Salimes, Police Department of City of Geneva, Edward Gritzner.

Michael J. Cieslewicz (argued), Kevin A. Christensen, Kasdorf, Lewis & Swietlik, Milwaukee, WI, DeVonna Joy, Nathan Fishback, Whyte Hirschboeck Dudek, Milwaukee, WI, for Town of Geneva in No. 96–1730.

Mary Beth Castino (argued), Mohr & Anderson, Hartford, WI, for George Condos.

Michael J. Cieslewicz (argued), Kevin A. Christensen, Kasdorf, Lewis & Swietlik, Milwaukee, WI, Kathryn M. West, DeVonna Joy, Nathan Fishback, Whyte Hirschboeck Dudek, Milwaukee, WI, for Town of Geneva in No. 96–2606.

Before POSNER, Chief Judge, and EASTERBROOK and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

David Schlessinger and two friends visited Anthony's Steakhouse in Geneva, Wisconsin, for dinner on January 8, 1994. Schlessinger ordered his steak medium-well done. Before

the main course arrived, Schlessinger deemed that he was "receiving substandard service at the restaurant, so I demanded better service." Judging the meat he received "burned," Schlessinger complained long and loud. George Condos, the owner, told him that the food had been properly prepared and asked him to stop disturbing the other patrons. Schlessinger was unwilling to eat the food, to leave, or to pay until his demand for a new entree had been met. Schlessinger's affidavit continues: "I feared trouble by the escalating situation and called the police [from my cellular phone] to get the situation corrected." George Salimes and another officer answered the call. Condos suggested to the officers that Schlessinger might be under the influence of drugs. Salimes told Schlessinger that, unless he paid the tab and left, he would be arrested for disorderly conduct and theft of services. The trio then paid and left.

Most people dissatisfied with a restaurant's service or cuisine would tell their friends not to go, resolve not to return themselves, and perhaps write a letter to the editor of the local newspaper or the Better Business Bureau, then let the matter drop. But having played the wise guy in calling the police, Schlessinger encored that performance by filing this suit against Condos, Salimes, and everyone else in or out of sight—including the Town of Geneva, the Town Board and its members, the Town's police department, and the Town's chief of police. According to the complaint, most of the defendants are liable under 42 U.S.C. § 1983 for an unconstitutional seizure of his person—even though he walked out of the restaurant unhindered. Condos and the Restaurant were sued under the diversity jurisdiction on a variety of state-law theories. None of the claims reached first base. The district court dismissed those against Condos and the Restaurant after finding that Schlessinger could not obtain damages exceeding the jurisdictional minimum (then $50,000). The court granted summary judgment to Salimes on the ground of qualified immunity. Claims against the remaining defendants collapsed because Schlessinger neglected to inform the court how they could be liable. He asserted that they were indifferent to his rights, but that is not enough for liability. After judgment, Schlessinger attempted to rectify the deficiency by a motion under Fed. R.Civ.P. 60(b)(6), which the district judge denied out of hand. Schlessinger has filed appeals from both the judgment and the order denying the Rule 60(b) motion.

This goofy lawsuit deservedly met an abrupt end in the district court. Frivolous at the outset, and likely maliciously retaliatory as well, the case has deteriorated on appeal. Consider for example the question whether the complaint satisfies the jurisdictional minimum amount in controversy. Plaintiffs receive the benefit of all doubt: a court may not dismiss the claim unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount". *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). Yet a plaintiff challenged to show that the recovery could exceed the requisite level cannot just appeal to the judge's druthers; he must show how the rules of law, applied to the facts of his case, could produce such an award. *Wellness Community [registered]-National v. Wellness House,* 70 F.3d 46, 49–50 (7th Cir.1995). Schlessinger was not arrested, and the check for all three diners was only $100 (some of which doubtless represents drinks and appetizers, and therefore is not in controversy). He himself called the police, initiating the events of which he complains. He accuses Condos of slander for telling Salimes that Schlessinger might be high on drugs. We suppose that this statement is defamatory and shall assume not only that the complaint adequately alleges malice but also that Wisconsin authorizes punitive damages for statements to the police—although it has a strong privilege (which Schlessinger does not discuss) for allegations of crime made to police for the purpose of initiating a bona fide investigation. *Otten v. Schutt,* 15 Wis.2d 497, 113 N.W.2d 152 (1962); *Joseph v. Baars,* 142 Wis. 390, 125 N.W. 913(1910). Does Wisconsin authorize punitive awards as high as $50,000 in the absence of any concrete injury? Schlessinger did not cite in the district court a single case addressing that subject, or any other theory of damages.

On appeal, his indifference to Wisconsin's law persists. Now Schlessinger seeks to establish a $50,000 amount in controversy by attaching two newspaper articles to his brief. One, from the *Wall Street Journal*, observes that high jury verdicts have led to proposals for statutory caps; it has nothing to do with the rules Wisconsin uses to compute punitive damages in defamation cases. The other, from the *Washington Post*, begins: "A former cafeteria manager at the Smithsonian Institution's National Museum of American History was awarded $400,000 Monday in a human rights lawsuit after a jury heard testimony that his boss addressed him as an 'old fart.'" What this suit, dealing with a hostile working environment, has to do with accusations of crime in Wisconsin Schlessinger does not endeavor to explain. No argument based on Wisconsin law has been preserved, so this appeal was doomed. Because he took his cue from the newspapers rather than from the law books, Schlessinger's lawyer (yes, he has one) neglected to notice that many jury awards are trimmed as legally unjustified. Runaway juries occasionally return mammoth verdicts; this interesting social phenomenon does not effectively abolish the jurisdictional minimum in diversity litigation, as Schlessinger seems to believe.

■ Next consider the claim against the Town, the Police Department, and their top officials. Under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), municipal bodies are not vicariously liable for the acts of their employees. They are liable only for their own policies, and Schlessinger has not tried to identify an unconstitutional policy that the Town or Police Department adopted. The claims against the members of the town board and chief of police are doubly vicarious. Even when a municipality is liable for an unconstitutional policy, this does not imply liability for the mayor; people are responsible for their own deeds, not for the deeds of their subordinates or employers. Schlessinger has never attempted to articulate a theory of liability for the chief of police, the chairman of the Town's board, and like defendants. Schlessinger contended only that inadequate training of the police amounted to deliberate indifference to his rights. His lawyer seems to be unaware that there is no general obligation to give public employees thorough training. *Collins v. Harker Heights,* 503 U.S. 115, 122–24, 112 S.Ct. 1061, 1067–68, 117 L.Ed.2d 261 (1992); *Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1988). What the Town's unconstitutional "policy" might be remains a mystery.

■ Once again, things have gone downhill on appeal. Instead of addressing the reasons he lost, Schlessinger argues that a district court's order denying a motion under Rule 60(b)(6) should be reviewed *de novo* by the court of appeals. The contention is nutty. *Metlyn Realty Corp. v. Esmark, Inc.,* 763 F.2d 826 (7th Cir.1985). *Ornelas v. United States,* —— U.S. ——, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), the sole case on which Schlessinger relies, concerns appellate review of probable-cause issues in criminal cases on direct appeal; it has nothing to do with post-judgment motions and does not imply that a litigant may snooze through a case and revive his claims under Rule 60(b)(6). Finality is an important goal in litigation, which *Ornelas* does not diminish. At all events, the contention is beside the point: by omitting any argument that the district court's decision in favor of these defendants was mistaken, Schlessinger has rendered the standard of review irrelevant.

■ As for the claim against Salimes: we may assume that an order by the police along the lines of "Do X or be taken into custody" requires the same sort of justification that custody itself requires—that is, depends on probable cause to believe that the person has committed a crime. We cannot find a case holding this, but the proposition is sensible for the same reason "your money or your life" is an objectionable demand. See *Henn v. National Geographic Society,* 819 F.2d 824 (7th Cir.1987). Schlessinger seeks to use this as the springboard to contend that refusing to pay for overdone food does not violate Wis. Stat. § 943.21 and therefore cannot support an arrest. Cf. *Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336 (7th Cir.1985). Yet a suit under § 1983 is not the right way to test the meaning of state law, as

if the police violate the fourth amendment every time they err in interpreting a statute. Misapplication of state law does not violate the Constitution. *Archie v. Racine,* 847 F.2d 1211 (7th Cir.1988) (en banc). We used this principle in *Gordon v. Degelmann,* 29 F.3d 295 (7th Cir.1994), to hold that an arrest based on a mistaken view of state law does not thereby violate the fourth amendment. Suppose this is wrong; how would Schlessinger prove his claim, when Salimes threatened arrest for *two* reasons: theft of services and disorderly conduct? There is no dispute about the elements of the latter offense, and on this record no dispute that Schlessinger committed it. Condos and Salimes describe Schlessinger as loud and obnoxious, disturbing the other patrons. Schlessinger's affidavit does not deny these characterizations of his conduct, so there is no material dispute and no impediment to summary judgment. Officer Salimes's threat to arrest Schlessinger therefore was proper—and it was also appropriate for Salimes to try to end the contretemps short of an arrest. Preserving the peace is an important function of the police, well served by his approach to the dispute.

Because Salimes did not violate the Constitution, we need not dwell on the immunity question—although it is worth noting that, true to form, Schlessinger's lawyer propounds a loopy thesis. He contends that "it is time to revisit the approach taken by the Court in earlier cases, and allow juries to decide the issues of fact relevant to claims of qualified immunity." Quite aside from the fact that Schlessinger's brief does not offer a coherent (indeed, any) argument for abandoning *Rakovich v. Wade,* 850 F.2d 1180, 1201–02 (7th Cir.1988) (en banc), there is the fact that judges have been told by the Supreme Court that, because immunity protects public officials from the burden of litigation, courts must resolve immunity defenses before trial, and when possible before discovery. See *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Schlessinger does not deign to discuss the decisions of the Supreme Court that undergird the cases he asks us to overrule.

Schlessinger's suit is absurd and likely malicious. It trivializes the constitutional rights he asks us to vindicate. If your meal is not tasty, you do not throw a tantrum, upset the other diners, and then sue the mayor of the town where the restaurant is located. Perhaps the dispute about the bill was meet for small-claims court in Wisconsin; it was nothing to make a federal case about. The appeal is even weaker than the original complaint. Suits and appeals such as this not only bring the courts into disrepute but also divert scarce judicial time from other litigants who have serious claims or defenses. We therefore direct Schlessinger and his attorney to show cause, within 14 days, why they should not be penalized under Fed. R.App. P. 38 and Circuit Rule 38 for pursuing a frivolous appeal.

AFFIRMED; ORDER TO SHOW CAUSE ISSUED.