# United States Court of Appeals

## For the First Circuit

No. 04-1419

UNITED STATES OF AMERICA,

Appellee,

v.

John Brennick,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge,
and Leval,* Senior Circuit Judge.

Bjorn Lange, Assistant Federal Public Defender, for appellant.
Mark E. Howard, Assistant United States Attorney, with whom Thomas P. Colantuono, United States Attorney, and Peter E. Papps, First Assistant United States Attorney, were on brief, for appellee.

April 26, 2005

---

*Of the Second Circuit Court of Appeals, sitting by designation.

**LEVAL**, <u>**Senior Circuit Judge**</u>.  Defendant John Brennick appeals from his conviction in the United States District Court for the District of New Hampshire under the Hobbs Act, 18 U.S.C. § 1951, for interference with commerce through robbery.  Found to be a career offender under § 4B1.1 of the United States Sentencing Guidelines, he was sentenced to the maximum term of 240 months in prison, followed by three years of supervised release.  Brennick contends that  (i) the indictment should have been dismissed by reason of prosecutorial misconduct before the grand jury; (ii) evidence of his identification from a photo array should have been suppressed because the array was impermissibly suggestive; (iii) the conviction should be reversed because of absence of evidence that the robbery affected interstate commerce as required by 18 U.S.C. § 1951; and (iv) under *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738 (2005), Brennick is entitled to resentencing.  We reject each of Brennick's arguments and affirm his conviction.

## I.  BACKGROUND

Brennick was indicted on January 8, 2003.  A grand jury issued a superseding indictment on July 9, 2003.  The charges were two counts of interference with commerce through robbery, in violation of 18 U.S.C. § 1951 (Counts I and III), and one count of interstate transportation of a stolen motor vehicle, in violation of 18 U.S.C. § 2312 (Count II).  The district court denied

Brennick's motion to dismiss the indictments based on allegations of prosecutorial misconduct in the grand jury, as well as his motion to suppress the evidence of the photo identification based on the allegation that the photo array was impermissibly suggestive.

Brennick was tried before a jury and convicted only on Count I, for the robbery of a Wal-Mart store in Concord, New Hampshire. We recite the facts in the light most favorable to the verdict. *United States v. Diaz*, 300 F.3d 66, 69 (1st Cir. 2002).

Around 1 or 1:30 AM on December 29, 2002, Brennick entered a Wal-Mart store in Concord, New Hampshire. After approaching a couple of other cashiers, he asked cashier Mark Parker to change a dollar bill. When Parker said he had no way of making change, Brennick purchased a pack of gum. As Parker opened his register and began giving Brennick change, Brennick grabbed Parker by his wrist. The next thing Parker knew, he was on his back on the ground, looking up to see Brennick taking money out of his register. Parker screamed for help, at which point Brennick pulled a knife from his jacket and pointed it at him.

Brennick fled to the parking lot and drove away in an Oldsmobile. Shortly after 2 AM, Mark Beaudoin of the New Hampshire State Police spotted a speeding Oldsmobile driven by Brennick roughly 20 or 25 minutes from the Wal-Mart store. When the trooper signaled the car to stop, it accelerated, which led to a high-speed

chase, which ended when Brennick crashed. He was apprehended with nearly $500 cash in his wallet.

The trial evidence included a knife found in a garbage can outside the Wal-Mart, which bore Brennick's partial left thumbprint, and the identification of Brennick's photo in an array by three Wal-Mart employees who saw Brennick in the store, including Parker. The jury found Brennick guilty on Count I, and not guilty on Counts II and III. At sentencing, the court determined that Brennick was a Career Offender under United States Sentencing Guidelines § 4B1.1 based on its finding of his long history of criminal acts. He was sentenced to the maximum term of 240 months in prison, followed by three years of supervised release.

## II. DISCUSSION

### A. Prosecutorial misconduct before the grand jury.

Brennick contends that the district court erred in denying his motion to dismiss the indictments because of prosecutorial misconduct before the grand jury. He suggests first that in the grand jury proceedings the prosecutor suborned perjury and misrepresented the evidence, overstating its capacity to incriminate Brennick. Brennick also protests a colloquy between a grand juror and a witness, which revealed that Brennick had a drug problem and had attended Narcotics Anonymous.

We find no merit in Brennick's arguments.  "All but the most serious errors before the grand jury are rendered harmless by a conviction at trial."  *United States v. Reyes-Echevarria*, 345 F.3d 1, 4 (1st Cir. 2003).  Brennick is correct that in the grand jury proceedings the prosecutor and police witnesses overstated the evidence in certain respects.[1]  We need not decide whether these errors would warrant dismissing the indictment prior to trial.  *See Bank of Nova Scotia v. United States* 487 U.S. 250, 256 (1988).  This is because, given Brennick's subsequent conviction in an error-free trial, the grand jury errors were not of a magnitude that would warrant overturning the trial judgment.  *See Reyes-Echevarria*, 343 F.3d at 4.

---

[1]For example, in the superseding grand jury, an exchange between the prosecutor and a police officer gave the strong impression that Brennick was observed fleeing the Wal-Mart and jumping into a car with an identified license plate number and model description.  The prosecutor asked a police officer about the individual who fled after robbing the Wal-Mart, "The individual who fled, did he flee in a 1983 Oldsmobile Royal, Massachusetts registration 591TTX?"  The police officer responded, "Yes."  The prosecutor then proceeded to ask the officer about a witness who saw the robber "jump into a car" and "gave the police a vehicle description."  At trial, however, the witness at issue made clear that she did not get a license plate number.  She did not see Brennick jump into the car, but only saw the car pulling out.  Though she identified the car as a "later eighties . . . Oldsmobile", her description was far from the level of detail indicated by the prosecutor and police officer before the grand jury.  Brennick correctly argues that the evidence against him would have been far stronger if, as suggested to the grand jury, the witness in the parking lot had in fact observed the license plate number and the model identification of the car in which Brennick was soon thereafter captured.

Similarly, while the revelation of Brennick's drug problem to the grand jury may have been inappropriate, any prejudice was wholly superseded by the proper conduct of a trial at which the jury found Brennick guilty. *See id.*

We find no error in the district court's denial of Brennick's motion to dismiss, much less abuse of discretion. *See id.*

B. <u>The photograph array.</u>

Brennick contends the district court should have suppressed identifications by witnesses of Brennick's photograph in a photo array, which he asserts was impermissibly suggestive. *Neil v. Biggers*, 409 U.S. 188, 196 - 98 (1972); *Simmons v. United States*, 390 U.S. 377, 384 (1968). His attack on the array rests on the following factors: At least four of the photographs were booking photographs while Brennick's was obtained from a New Hampshire non-driver identification card (Brennick's photograph was digitally copied, cropped, and changed from color to black and white so as to conform in size and appearance to the others); Brennick's photograph was located in the second position (of four) from the left in the top row, and the man in the first position had a darker complexion than Brennick's; Brennick's photograph and one other have a slightly darker background than three others; and Brennick's hairstyle, forehead, and clothing differ from the others. Our review of the district court's denial of Brennick's

motion to suppress the photo identification is plenary. *See United States v. McCarthy*, 77 F.3d 522, 529 (1st Cir. 1996). We review the district court's findings of fact for clear error. *Id.*

We have examined the photo array and find nothing suggestive in it. It is true that Brennick's photograph, unlike some of the others, was not a booking photograph. The police used a different photo because Brennick's booking photo showed scratches on his face, which might have called attention to it. Neither the source of the photograph nor the minimal alterations to it are apparent in the array or make the photograph stand out suggestively in any way. While the placement of Brennick's photo in the array may have caused a witness to encounter it prior to most of the others, it was not suggestive. And while the lighting of the photograph on the man in the number one position is less strong than on Brennick, so that his skin is less illuminated, it does not appear that he has significantly different pigmentation from Brennick's. As none of the witnesses described Brennick as wearing a zippered mock turtleneck and the other men pictured in the array are not uniformly dressed in a manner that makes Brennick stand out, it is irrelevant that he is the only one pictured wearing one. Brennick's hairstyle and forehead are not so different from the others as to exclude the others from reasonable consideration. The background of Brennick's photo is the same as two others and not sufficiently distinct from other backgrounds in

the array as to be impermissibly suggestive. Furthermore, three of the other photographs differ in background from others. On the whole, there is a high degree of similarity among the eight men depicted, as well as among the eight photographs. The array does not in any way draw suggestive attention to Brennick.

C. The robbery's effect on interstate commerce.

Brennick next contends that the evidence was insufficient to establish that the robbery affected interstate commerce. He argues that the $522.37 taken from a store with gross sales for the month of $8.5 million was insufficient to cause the kind of effect on commerce necessary to trigger the applicability of the Hobbs Act.

In *United States v. Capozzi*, considering the effect of *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000), we reaffirmed that, to establish the requisite effect on interstate commerce for a Hobbs Act violation, the government need show only that the conduct created a "realistic probability" of a minimal effect on interstate commerce. *Capozzi*, 347 F.3d 327, 335 (1st Cir. 2003).

The Concord Wal-Mart store manager testified at trial that if the stolen money had not been taken, it would have been reinvested in the purchase of goods manufactured outside the state

of New Hampshire.  That evidence sufficed to show the necessary effect on commerce.[2]  *See Capozzi* at 335.

D. <u>Resentencing under Blakely/Booker.</u>

In his original brief, Brennick made the argument, for the first time on appeal, that it was plain error to sentence him as a Career Offender under U.S.S.G. § 4B1.1 without a jury finding of the required elements because, under the reasoning of *Blakely*, the Sixth Amendment right to jury trial applies to sentencing increases specified in the United States Sentencing Guidelines.

---

[2]The government's brief, which consisted largely of conclusory assertions, was not as helpful as it might have been.  In response to Brennick's contention that the evidence failed to show a sufficient effect on interstate commerce, the brief neglects to tell us what evidence was introduced to show the effect on commerce.  It asserts that "courts of appeals, including this one, have repeatedly and uniformly upheld Hobbs Act convictions where the victim of the robbery was a commercial establishment that regularly purchased goods or sent profits across state lines."  The brief, however, fails to cite to any cases in support of the proposition.

Its discussion of Brennick's contention of misrepresentation of the evidence in the grand jury fails to discuss or even mention any of the instances of misrepresentation, although as noted above, they were not insignificant.  The "Statement of the Facts" was copied almost verbatim from a pretrial district court order, including a footnote stating: "As an evidentiary hearing on this motion was not held, the recitation of facts is largely derived from the police report."  Needless to say, because in the intervening time since the district court's order there had been a trial, the government had access to a better source of facts than either a police report or a pretrial order of the district court.

We might, of course, have declined to consider contentions not adequately presented in a party's brief.  *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).  In future cases, where the answer to the point in issue is less clear, we may well exercise our discretionary authority differently.

-9-

After oral argument in this case, the Supreme Court decided *United States v. Booker*. We invited both parties to file supplemental briefs on the point. Brennick now contends that he is entitled to a remand for resentencing at which he and his counsel would have an opportunity to present mitigating evidence.

We reject Brennick's argument. As Brennick concedes in his supplemental brief, the *Booker* error was not preserved by objection during the proceedings below. As we made clear in *United States v. Antonakopoulos*, under the Supreme Court's teachings of *United States v. Olano*, for a court of appeals to notice and correct an error not objected to in the district court, "[t]here must be an 'error' that is 'plain' and that 'affect[s] substantial rights.'" *Antonakopoulos*, 399 F.3d 68, 77 (1st Cir. 2005) (quoting *Olano*, 507 U.S. 725, 732 (1993)). Once these three requirements are met, "the court of appeals then has discretion to correct the error only if it 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 736). To meet these requirements, a defendant sentenced prior to *Booker* who failed to preserve the objection "ordinarily . . . must point to circumstances creating a reasonable probability that the district court would impose a different sentence more favorable to the defendant under the new 'advisory Guidelines' *Booker* regime." *Id.* at 75. And, in *United States v. Heldeman*, 402 F.3d 220, 224 (1st Cir. 2005), we noted that "we are

inclined not to be overly demanding as to proof of probability where, either in the existing record or by plausible proffer, there is reasonable indication that the district judge might well have reached a different result under advisory guidelines."

Brennick has not shown any indication, let alone a "reasonable probability," that the district court would have imposed a more favorable sentence if it had understood the Guidelines to be advisory. The district court did understand that it had discretion to sentence at any level within the range of 210 to 240 months. It chose the top of the range, and explained, "In fact, if I wasn't capped by a maximum sentence, I would give you a higher sentence than 240 months because I think given your crimes that's what you deserve." Given the court's exercise of discretion to sentence at the most severe end of the range and its assertion that it would have given a more severe sentence if it had the latitude to do so, we can see no reasonable probability that the court would have sentenced more leniently had it understood that it was not constrained by the Guidelines. *See United States v. González-Mercado*, 402 F.3d 294, 304 (1st Cir. 2005).

Brennick argues that we should remand for resentencing so that the district court may give more emphasis to mitigating factors that ordinarily have little influence under the Guidelines, such as his troubled childhood and drug addiction. The argument is not persuasive. At sentencing, Brennick did speak at length about

these considerations and the district court acknowledged them.  The court nevertheless sentenced Brennick to the statutory maximum, thirty months above the Guidelines minimum, and explained, "I appreciate your remarks.  I've taken them into account.  I do think the government is right here, that a sentence at the top end of the range is appropriate . . . ."  We find no reasonable probability that the district court would have imposed a more lenient sentence had it understood that the sentencing Guidelines were advisory.[3]

### III.  CONCLUSION

For the reasons set forth above, we affirm Brennick's conviction and sentence.

---

[3]Brennick also argues, referring to the district court's Career Offender determination, that his "Sixth Amendment right to have a jury determine all sentence-enhancing facts, including those supporting Career Offender sentencing, warrants a remand for re-sentencing."  In *Antonakopoulos*, we "reject[ed] the view that a *Blakely* [Sixth Amendment] error automatically requires a *Booker* remand" for resentencing.  399 F.3d at 79.  We were very clear that the judge's finding of "additional facts which raised the sentence authorized solely by the jury verdict or guilty plea . . . is insufficient to meet the third and fourth *Olano* prongs on plain-error review."  *Id*.  Instead, this court must find a reasonable probability that advisory Guidelines would have produced a more favorable sentence.